IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-mc-00065-CMA-MJW

CINDA DAGGETT,

Movant,

v.

MAXCIMO SCOTT,
JAY ENSOR,
MATTHEW MEDINA,
EUFEMIA JIMENEZ,
KRYSTAL PARKER,
STACY HIGGS, and
CHRISTINA JEWEL GATELY,
*on behalf of themselves and all others similarly situated*,

Respondents.

**ORDER ON NON-PARTY CINDA DAGGETT'S MOTION TO QUASH OR MODIFY SUBPOENA TO TESTIFY AT A DEPOSITION (Docket No. 1)**

**and**

**ORDER ON INTERESTED PARTY CHIPOTLE MEXICAN GRILL, INC.'S and CHIPOTLE SERVICES, LLC'S MOTION TO QUASH SUBPOENA AND DEPOSITION OF CINDA DAGGETT (Docket No. 3)**

**and**

**ORDER ON RESPONDENTS' MOTION TO TRANSFER THE SUBPOENA MOTIONS TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (Docket No. 11)**

**Entered by Magistrate Judge Michael J. Watanabe**

In the Southern District of New York, a collective and class action is pending against Chipotle Mexican Grill, Inc. and Chipotle Services, LLC ("Chipotle"). The lawsuit is a conditionally certified collective action under the Fair Labor Standards Act ("FLSA"), with pendant state-law claims that the plaintiffs hope to certify as class actions.

Generally, the lawsuit alleges that employees with the job title "Apprentices" (or similar titles) were inappropriately treated as management positions exempt from overtime pay. Pending before this Court are three motions related to a Rule 45 deposition subpoena.

The Court has reviewed the parties' filings (Docket Nos. 1, 3, 4, 5, 11, 12, 13, 14, 18, 19, 20, 21, & 22), taken judicial notice of the Court's entire file in this matter, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the Court:

- Grants in part and denies in part Movant's motion to quash (Docket No. 1);
- Denies as moot Chipotle's motion to quash (Docket No. 3); and
- Denies Plaintiffs' motion to transfer (Docket No. 11).

## **Background**

The underlying lawsuit was filed in late 2012.  (Docket No. 4, p.1.)  But in 2011, sensing a trend in wage-and-hour litigation, Chipotle had sought out legal opinions on its treatment of Apprentices.  (*Id.* at 2–3.)  One of the law firms rendering an opinion hired a human resources consultant, Cinda Daggett, to observe the day-to-day work of Apprentices and prepare a written report for the law firm's use.  (*Id.*)  Several discovery disputes before the Southern District of New York, and now the Rule 45 motions pending in this Court, concern Ms. Daggett and her report.

The Plaintiffs in the underlying lawsuit (Respondents here) sought Ms. Daggett's records in discovery.  Chipotle asserted attorney-client privilege.  The Southern District of New York ruled against Chipotle on the privilege question—finding both that Chipotle

3

had waived privilege by placing good faith and reliance on counsel at issue, *Scott v. Chipotle Mexican Grill, Inc.*, ___ F. Supp. 3d ___, 2014 WL 7236907 (S.D. N.Y. Dec. 18, 2014), and that Ms. Daggett's report was not privileged in the first place, *Scott v. Chipotle Mexican Grill, Inc.*, ___ F. Supp. 3d ___, 2015 WL 1424009 (S.D. N.Y. Mar. 27, 2015), *motion for reconsideration denied*, 2015 WL 2182674 (May 7, 2015). Plaintiffs then served a document subpoena on Ms. Daggett. (Docket No. 1-1.) She responded by providing a copy of her report; she did not produce her work-file or any related documents, claiming that such documents were lost in a computer crash. (Docket No. 12, pp. 3–4.)

Plaintiffs then served a deposition subpoena on Ms. Daggett. (Docket No. 1-2.) She has moved to quash the subpoena, claiming status as an unretained expert under Federal Rule of Civil Procedure 45(d)(3)(B)(ii). (Docket No. 1.) Chipotle filed a motion seeking the same relief. (Docket No. 3.) Plaintiffs oppose such relief, and they argue in the alternative that the matter should be transferred to the Southern District of New York to be handled by U.S. Magistrate Judge Sarah Netburn, who is presiding over pretrial matters in the underlying litigation. (Docket No. 11.)

## Discussion

**I.** **Ms. Daggett's Motion to Quash**

Under Federal Rule of Civil Procedure 45(d)(3):

**(3) Quashing or Modifying a Subpoena.**

. . .

>  (B) When Permitted.   To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>
>>  . . .
>
>>  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
>
>  (C) Specifying Conditions as an Alternative.   In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
>
>>  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
>
>>  (ii) ensures that the subpoenaed person will be reasonably compensated.

Fed.R.Civ.P. 45(d)(3).   Nothing in this rule protects a fact witness—one whose testimony is based on personal knowledge under Federal Rule of Evidence 701 rather than specialized opinion under Federal Rule of Evidence 702—from compulsory testimony simply because the witness happens also to be an expert.   *See* Fed. R. Civ. P. 45 advisory committee's note (1991 amendments) ("the district court's discretion in these matters should be informed by 'the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony'").   But the rule does protect experts from uncompensated work as expert witnesses.   *See id.* ("A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts.   Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give

5

effective testimony, but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property." (internal citations omitted)).

In situations like this, where experts have been hired to perform factual investigations as part of a company's due diligence (rather than in anticipation of specific litigation), courts draw a distinction between (1) the factual record compiled by the expert and (2) the opinion and analysis performed by the expert.  See *Chavez ex rel. Chavez v. Bd. of Educ. of Tularosa Mun. Sch.*, 2007 WL 1306734, at *3–5 (D. N.M. Feb. 16, 2007) ("[R]ule 45(c)(3)(B)(ii)'s protections would appear to be applicable when the substance of a deponent's testimony can be considered expert in nature pursuant to rule 702."); *see also MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2794390, at *2 (N.D. Cal. July 15, 2010) (collecting cases); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 242 (E.D. Pa. 2014) (distinguishing between market-analysis firm's records from third-party sources, which were subject to subpoena, and its original analysis, which was protected by Rule 45(d)(3)(B)(ii)).  This distinction appears in the text of Rule 45(d)(3)(B)(ii): the expert's factual record "describe[s] specific occurrences in dispute" and therefore falls outside the protection of Rule 45(d)(3)(B)(ii); but the same expert's own analysis "does not describe specific occurrences in dispute"; rather, it "results from the expert's study" and is protected by the rule.

6

Ms. Daggett and Chipotle both argue that Plaintiffs seek Ms. Daggett's expert opinion and therefore the protections of Rule 45(d)(3)(B)(ii) apply. The record, however, suggests that Plaintiffs seek the factual basis for Ms. Daggett's report. Neither the documents subpoena nor the deposition subpoena refer to Ms. Daggett's methodology or to the specialized authorities she relied upon in forming her opinions. Instead, the documents subpoena seeks the factual record she compiled—for example, her notes or recordings from interviewing Apprentices. (*See* Docket No. 1-1, p.5.) The deposition subpoena does not identify the topics to be covered in the deposition (*see* Docket No. 1-2), but Plaintiffs' briefing before this Court suggests that Plaintiffs intend to inquire as to Ms. Daggett's factual assumptions and investigation. In opposing Ms. Daggett's motion, Plaintiffs made the following statement as to what they hope to gain from the deposition:

> [T]he report is only the end product of her observations and interviews. It does not include what she relied on in making her conclusions, what Chipotle's employees told her (including what they told her to write), or information she might have disregarded or failed to include in her report.

(Docket No. 12, p.9.) To be sure, this focus on factual assumptions and omissions sounds like the inquiry one would make when preparing to cross-examine an expert witness. But it should also be noted that, here, Ms. Daggett has not produced her work-file; she has claimed that she lost all her files in a computer crash. As a result, there is no other way for Plaintiffs to discover the factual record compiled in Ms. Daggett's investigation. Plaintiffs will need to ask Ms. Daggett what she learned from her investigation—and a necessary part of that process will be asking her what she *didn't* learn.

Provided that Plaintiffs stick to asking about Ms. Daggett's factual investigation, Plaintiffs are entitled to take her deposition. To that extent, Ms. Daggett's motion to quash is DENIED. However, Plaintiffs have provided no reason why they cannot hire their own expert witness in this case, and therefore have not shown any undue hardship justifying the deposition of an unretained expert's opinion. To the extent Plaintiffs wish to move beyond the factual investigation, into Ms. Daggett's methodology, analysis, or expertise, Ms. Daggett's motion to quash is GRANTED.

## II. Other Motions

Chipotle also moved to quash the deposition subpoena. The parties dispute whether Chipotle has standing to do so. However, Chipotle makes no arguments that are materially different from Ms. Daggett's own arguments. The Court has resolved the matter based on Ms. Daggett's motion, and Chipotle's motion is thus DENIED AS MOOT.

Finally, Plaintiffs ask that the Court transfer this matter to the Southern District of New York rather than resolve the motion on the merits. Federal Rule of Civil Procedure 45(f) allows transfer in only two situations: (1) where the subpoenaed party consents, and (2) where "exceptional circumstances" warrant the transfer. Fed. R. Civ. P. 45(f). Ms. Daggett does not consent to transfer (Docket No. 22), and thus the applicable standard is "exceptional circumstances." The advisory committee notes explain:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the

> same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45 (advisory committee note for 2013 amendments). Here, there would seem to be little real burden on Ms. Daggett—since her attorneys are capable of entering appearances and appearing telephonically in the Southern District of New York, and the place of deposition would remain in Colorado. But that said, there is also little reason to believe that this Court's order would interrupt Magistrate Judge Netburn's ability to manage the underlying litigation. As Plaintiffs point out, Magistrate Judge Netburn has issued at least two rulings on whether Ms. Daggett's report is subject to the attorney-client privilege—but that question has little (if anything) to do with whether Ms. Daggett is an expert witness or a lay witness. The Court sees little risk of conflicting orders and therefore does not find exceptional circumstances warranting transfer.[1] Plaintiffs' motion to transfer is thus DENIED.

---

[1] The Court does note, however, that Defendants have not disclaimed an intention to use Ms. Daggett's report in support of forthcoming dispositive motions. (Docket No. 19, p.5.) This Order considers only the application of Rule 45(d)(3)(B), based on the parties' representations that Ms. Daggett is not retained as an expert in the underlying litigation. This Order should not be read to limit or impact any future order by the Southern District of New York under Rule 26(b)(4), should Ms. Daggett's relationship to the underlying litigation change.

9

## **Order**

For the foregoing reasons, it is hereby ORDERED that:

- Movant Cinda Daggett's Motion to Quash or Modify Subpoena to Testify at a Deposition (Docket No. 1) is GRANTED IN PART and DENIED IN PART, as set forth above;

- Interested Party Chipotle Mexican Grill, Inc.'s and Chipotle Services, LLC's Motion to Quash Subpoena and Deposition of Cinda Daggett (Docket No. 3) is DENIED AS MOOT; and

- Respondents' Motion to Transfer the Subpoena Motions to the United States District Court for the Southern District of New York (Docket No. 11) is DENIED.

Dated:   May 26, 2015         * /s/ Michael J. Watanabe*
          Denver, Colorado        Michael J. Watanabe
                                              United States Magistrate Judge